# SUPREME COURT OF THE UNITED STATES

ASHLYN HOGGARD *v.* RON RHODES, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 20–1066.    Decided July 2, 2021

The petition for a writ of certiorari is denied.

Statement of JUSTICE THOMAS respecting the denial of certiorari.

As I have noted before, our qualified immunity jurisprudence stands on shaky ground. *Ziglar* v. *Abbasi*, 582 U. S. ___, ___ (2017) (opinion concurring in part and concurring in judgment); *Baxter* v. *Bracey*, 590 U. S. ___ (2020) (opinion dissenting from denial of certiorari). Under this Court's precedent, executive officers who violate federal law are immune from money damages suits brought under Rev. Stat. §1979, 42 U. S. C. §1983, unless their conduct violates a "clearly established statutory or constitutional righ[t] of which a reasonable person would have known." *Mullenix* v. *Luna*, 577 U. S. 7, 11 (2015) (*per curiam*) (internal quotation marks omitted). But this test cannot be located in §1983's text and may have little basis in history. *Baxter*, 590 U. S., at ___, ___ (slip op., at 2, 4) (opinion of THOMAS, J.).

Aside from these problems, the one-size-fits-all doctrine is also an odd fit for many cases because the same test applies to officers who exercise a wide range of responsibilities and functions. *Ziglar*, 582 U. S., at ___–___ (opinion of THOMAS, J.) (slip op., at 4–5).* This petition illustrates that oddity: Petitioner alleges that university officials violated

——————

*Certain Government officials receive heightened immunity, including absolute immunity, based on the common law or their constitutional status. *Harlow* v. *Fitzgerald*, 457 U. S. 800, 807 (1982) (discussing judges, prosecutors, and the President, among others).

her First Amendment rights by prohibiting her from placing a small table on campus near the student union building to promote a student organization. According to the university, petitioner could engage with students only in a designated "Free Expression Area"—the use of which required prior permission from the school. The Eighth Circuit concluded that this policy of restricting speech around the student union was unconstitutional as applied to petitioner. *Turning Point USA at Ark. State Univ.* v. *Rhodes*, 973 F. 3d 868, 879 (2020). Yet it granted immunity to the officials after determining that their actions, though unlawful, had not transgressed "'clearly established'" precedent. *Id.,* at 881.

But why should university officers, who have time to make calculated choices about enacting or enforcing unconstitutional policies, receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting? We have never offered a satisfactory explanation to this question. See *Ziglar*, 582 U. S., at ___–___ (opinion of THOMAS, J.) (slip op., at 4–5).

This approach is even more concerning because "our analysis is [not] grounded in the common-law backdrop against which Congress enacted [§1983]." *Id.,* at ___ (slip op., at 5). It may be that the police officer would receive more protection than a university official at common law. See Oldham, Official Immunity at the Founding (manuscript, at 22–23, available at https://ssrn.com/abstract=3824983) (suggesting that the "concept of unreasonableness [in the Fourth Amendment] could bring with it [common-law] official immunities"). Or maybe the opposite is true. Lee, The Curious Life of *In Loco Parentis* at American Universities, 8 Higher Ed. in Rev. 65, 67 (2011) (discussing how "[f]rom the mid-1800s to the 1960s" "constitutional rights stopped at the college gates—at both private and public institutions"). Whatever the history establishes, we at least ought to consider it. Instead, we have "substitute[d] our own policy

preferences for the mandates of Congress" by conjuring up blanket immunity and then failed to justify our enacted policy. *Ziglar,* 582 U. S., at \_\_\_ (opinion of THOMAS, J.) (slip op., at 6).

The parties did not raise or brief these specific issues below. But in an appropriate case, we should reconsider either our one-size-fits-all test or the judicial doctrine of qualified immunity more generally.